FILED
2009 Jan-23  PM 04:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **JARVIS M. ADAMS,** *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 07-S-2346-NE** |
| | ) | |
| **STILES A. KELLETT, JR.,** | ) | |
| *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

This opinion addresses the motions to dismiss filed by the following defendants:  William R. Bassett ("Bassett"), pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 12(b)(2) and 12(b)(6);[1] Stiles A. Kellett, Jr., and Samuel B. Kellett ("Stiles and Samuel Kellett"), pursuant to Fed. R. Civ. P. 12(b)(2);[2] and, Stiles and Samuel Kellett, the "Stiles A. Kellett, III, Irrevocable Trust," the "Samuel B. Kellett, Jr., Irrevocable Trust," the "Barbara Katherine Kellett Irrevocable Trust," and the "Charlotte Rich Kellett Irrevocable Trust" (collectively, "the Kellett defendants"), pursuant to Fed. R. Civ. P. 12(b)(6).[3]  The action arises from the sale of stock in an entity known as "Time Domain Corporation" by the Kellett defendants

---

[1] *See* doc. no. 33.

[2] *See* doc. no. 42.

[3] *See* doc. no. 39.

to each of the forty-two plaintiffs.[4] Defendant Bassett served as the Kellett defendants' attorney in connection with the sale and purchase of the stock.[5] Bassett and the Kellett defendants are residents of Georgia.[6] Plaintiffs assert that they are "all citizens of a state other than the State of Georgia."[7] Accordingly, plaintiffs base the jurisdiction of this court on the diversity statute, 28 U.S.C. § 1332(a)(1). In such a case, this court must apply state substantive law and federal procedural and evidentiary rules. *See*, *e.g.*, *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938); *Klaxon Co. v. Stentor Electric Manufacturing Co*, 313 U.S. 487, 496-97 (1941); *National Distillers and Chemical Corp. v. Brad's Machine Products, Inc.*, 666 F.2d 492, 494-45 (11th Cir. 1982); *Johnson v. William C. Ellis & Sons Works, Inc.*, 609 F.2d 820, 821-22 (5th Cir. 1980) (holding that, "in diversity cases, the Federal Rules of Evidence govern the admissibility of evidence in the federal courts").[8]

---

[4] The following individuals and entities are plaintiffs: Jarvis M. Adams; Robert A. Atallo; Janet F. Atallo; James G. Barrer; Carole R. Booher; Dr. Peter C. Booher; Archie L. Booth; William B. Booth; Frederick W. Chiverton; Charles E. Cox, Sr.; JoAnn Daniels; Cynthia Dasher; Thomas R. Dasher; Gary K. Grace; Garland V. Grace; Lucy C. Grace; John W. Johnson; Randy Jones; Nancy Jones; William J. Kauffman, Jr.; Wallace E. Kirkpatrick; Robert O. Lewis; John E. Lewis; Stephen G. Mann; Larry E. Marshall, Jr.; Lisa N. Marshall; Carolyn Martin; George Morgan; Norma Oberlies; R. Owen Roberts; Barbara A. Saunders; George E. Saunders; Betty V. Snider; Roger Stafford; Dennis S. Stapp; Larry Stewart; Suzanne Stiglets; Fred P. Tedesco; UWB Investments Co., LLC; UWB Ventures, LLC, Jack Waddey, Jr., and James D. Watson.

[5] *See* doc. no. 1 (Complaint), ¶ 5.

[6] *Id.*, ¶ 1.

[7] *Id.*

[8] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

A court sitting in diversity also must apply the choice of law rules of the state in which it sits. *See*, *e.g.*, *Klaxon*, 313 U.S. at 496. Alabama law provides that, when the parties expressly choose a particular state's law to govern the interpretation of their contract, that choice generally should be given effect. *See*, *e.g.*, *Ex parte Owen*, 437 So. 2d 476, 481 (Ala. 1983); *Watkins Co. v. Hill*, 108 So. 244 (1926). The purchase and sale agreements executed by plaintiffs and the Kellett defendants provide that: "This agreement and the legal relations among the parties hereto shall be governed by and construed in accordance with the laws of the State of Alabama applicable to contracts made and performed in Alabama."[9]  Accordingly, this court will apply the substantive law of the State of Alabama.

## I. STANDARDS OF REVIEW

### A.    Federal Rule of Civil Procedure 12(b)(6)

The Federal Rules of Civil Procedure require only that a complaint contain a "'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, —, 127

---

[9] Doc. no. 44, Exhibit 3 (purchase and sale agreement), ¶ 13.

S. Ct. 1955, 1969 (2007) (citations omitted).  These factual allegations need not be detailed, but "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at —, 127 S. Ct. at 1964-65 (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986), and *Sanjuan v. American Board of Psychiatry and Neruology, Inc.,* 40 F.3d 247, 251 (7th Cir. 1994)) (bracketed alteration in *Twombly*).  Thus, even though notice pleading may not require that the pleader allege a "specific fact" to cover every element, or allege "with precision" each element of a claim, the complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Roe v. Aware Woman Center for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001).

When ruling upon a Rule 12(b)(6) motion, the court must accept all well-pleaded facts as true, and construe them in the light most favorable to the non-moving party. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *see also, e.g., Brooks v. Blue Cross and Blue Shield of Florida*, 116 F.3d 1364, 1369 (11th Cir. 1997); *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983).  Viewed in this manner, the factual allegations of the complaint "must be enough to raise a right to relief above the speculative level .

. . .” *Twombly,* 550 U.S. at —, 127 S. Ct. at 1965 (citations omitted). Stated differently, the plaintiffs must plead facts sufficient to "nudge[] [their] claims across the line from conceivable to plausible . . . ." *Id.* at —, 127 S. Ct. at 1974.

## B.   Federal Rule of Civil Procedure 12(b)(2)

When ruling upon a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction in the absence of an evidentiary hearing,

> the plaintiff must establish a prima facie case of personal jurisdiction over a nonresident defendant. A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict. The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits. Finally, where the plaintiff's complaint and the defendant's affidavits conflict, the district court must construe all reasonable inferences in favor of the plaintiff.

*Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 255 (11th Cir. 1996) (quoting *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) (citations omitted); *see also, e.g.*, *Morris v. SSE, Inc*., 843 F.2d 489, 492 (11th Cir. 1988).

## II.  ALLEGATIONS OF PLAINTIFFS' COMPLAINT

Plaintiffs' complaint is based upon the following allegations which, as noted above, the court must accept as true. *Robinson*, 74 F.3d at 255; *see also* doc. no. 1 (Complaint), ¶¶ 1-5.

During the Summer of 2000, Samuel Kellett notified officers of Time Domain

of the Kellett defendants' desire to sell some of their corporate stock, and requested that the corporation assist in identifying qualified purchasers.[10]  At that time, the Kellett defendants owned more than a half-million shares of Time Domain stock.[11]  Throughout the Summer of 2000, various officers of Time Domain directed some potential stock purchasers to contact William R. Bassett, the Kellett defendants' attorney.[12]  Other individuals and entities learned of the Kellett defendants' desire to sell some of their Time Domain stock from sources other than corporate officers, *e.g.*, other prospective purchasers, and they also contacted Bassett.

At all times relevant to this action, Bassett was (and still is) a resident of the State of Georgia, and a member of a law firm with offices in Atlanta.[13]  Bassett had provided legal services to the Kellett defendants for thirty years or more.  In February of 2000, members of the Kellett family asked him to prepare the legal documents necessary to transfer title of any stock that might be sold.[14]  Bassett thus drafted the purchase and sale agreement discussed hereafter, and transmitted other documents to any persons who expressed an interest in purchasing some of the Kelletts' stock.[15]

---

[10] *See* doc. no. 44, Exhibit 2 (Affidavit of Samuel Kellett), ¶ 11.

[11] *See id.*, Exhibit 3 (purchase and sale agreement).

[12] *Id.* at ¶ 5.

[13] *See* doc. no. 36, Exhibit 1 (Affidavit of Bassett), ¶ 2.

[14] *Id.*, ¶¶ 3, 5.  Bassett does not specify who asked him to prepare the legal documents.

[15] *Id.*

Bassett asserts that his only contacts with the State of Alabama consisted of telephone calls from-and-to, and limited correspondence to-and-from, various plaintiffs, *each of whom originally initiated contact with him*.[16]

When potential purchasers initiated contact with Bassett, he mailed each a proposed purchase and sale agreement and several related documents.[17]  When an offer to purchase was accepted by the Kelletts, Bassett mailed a letter to the offeror stating that the closing of the sale could occur *only after* the Corporation and then-existing shareholders of Time Domain declined to purchase the shares that the Kellett defendants proposed to sell to the offeror/prospective purchaser.[18]  After both Time Domain and then-existing shareholders declined the opportunity to purchase the Kelletts' shares, Bassett sent another letter to the prospective purchaser, confirming

---

[16] *Id.*, ¶ 8.

[17] *Id.*, ¶ 7.

[18] *See* doc. no. 36, Exhibit 1 (Affidavit of Bassett), ¶ 7.  The purchase and sale agreement contains the following right of first refusal provision:

> **Sale Subject to Right of First Refusal.**  It is recognized that the Shareholder Agreement described in section 4.B. above grants to the Corporation and to each of the shareholders of the Corporation who are a party [sic] to the Shareholder Agreement a right of first refusal to purchase the shares of stock of the Corporation which any shareholder desires to sell . . . and that such right of first refusal is applicable to the sale of Shares pursuant to this Agreement.  *The parties recognize that the Shareholder Agreement grants the Corporation the first right of refusal to purchase the Shares, and if the Corporation waives its right to purchase same, then the remainder of the shareholders which are a party to the Shareholder Agreement are granted the right of first refusal with respect to the Shares.*

Doc. no. 44, Exhibit 3 (purchase and sale agreement), ¶ 6 (emphasis supplied).

the date and place of closing.[19]

Forty-two individuals and entities who or which purchased Time Domain stock from the Kelletts during the Summer of 2000 commenced this action on December 28, 2007.[20] Their complaint contains three counts, each of which is based upon the "Blue Sky laws" of the State of Alabama,[21] prescribing civil liability for violations of the Alabama Securities Act. *See* Ala. Code § 8-6-1 *et seq.* (1975) (2002 Replacement Vol.). Plaintiffs assert that, under the terms of the Alabama Securities Act, Time Domain stock was a "security,"[22] the transactions at issue constituted

---

[19] *Id.*

[20] *See* doc. no. 1 (Complaint).

[21] The Alabama Securities Act is known as a "blue sky law." The Alabama Supreme Court has stated the "term 'blue sky laws' originated with an early description of the purpose of state security laws as protecting investors against 'speculative schemes which have no more basis than so many feet of blue sky.'" *Gilford Partners v. Pizitz*, 630 So. 2d 404, 407 n.3 (Ala. 1993) (quoting *Hall v. Geiger-Jones Co.*, 242 U.S. 539, 550 (1917)).

[22] Section 8-6-2(10) defines the term "Security" as follows:

Any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, certificate of interest or participation in an oil, gas, or mining title or lease or in payments out of production under such a title or lease, annuity contract unless issued by an insurance company, bankers' shares, trustees' shares, investment participating bonds, investment trust debentures, units, shares, bonds and certificates in, for, respecting, or based upon any form of securities or collateral, subscriptions and contracts covering or pertaining to the sale or purchase on the installment plan of any security as herein defined, or subscription or contracts covering or pertaining to the sale or purchase of beneficial interest in title to property, profits or earnings, or any right to subscribe to any of the foregoing, or any instrument of any kind commonly known as a security.

Ala. Code § 8-6-2(10) (1975) (2002 Replacement Vol.).

"offers" and "sales,"[23] Bassett was a "dealer" in Time Domain securities,[24] Bassett

was an "agent" of the Kellett defendants,[25] Bassett was a "control person" of the

---

[23] Section 8-6-2(8) defines the terms "Sale, Sell, Offer and Offer to sell" as follows:

"Sale" and "sell" includes every contract of sale of, contract to sell, or disposition of a security or interest in a security for value. "Offer" or "offer to sell" includes every attempt to offer or dispose of, or solicitation of an offer to buy, a security or interest in a security for value.  Any security given or delivered with, or as a bonus on account of, any purchase of securities or any other thing is considered to constitute part of the subject of the purchase and to have been offered and sold for value.  A purported gift of assessable stock is considered to involve an offer and sale. Every sale or offer of a warrant or right to purchase or subscribe to another security of the same or another issuer, as well as every sale or offer of a security which gives the holder a present or future right or privilege to convert into another security of the same or another issuer, is considered to include an offer of the other security.

Ala. Code § 8-6-2(8) (1975) (2002 Replacement Vol.).

[24] Section 8-6-2(3) defines the term "Dealer" as follows:

Any person engaged in the business of effecting transactions in securities for the account of others or for his own account. Such term does not include:

a. An agent, issuer, bank, savings institution, savings and loan association, credit union, or trust company, or

b. A person who has no place of business in this state if he effects transactions in this state exclusively with or through the issuers of the securities involved in the transactions and other dealers.

Ala. Code § 8-6-2(3) (1975) (2002 Replacement Vol.).

[25] Section 8-6-2(2) defines the term "Agent" as follows:

Any individual other than a dealer who represents a dealer or issuer in effecting or attempting to effect sales of securities, but such term does not include an individual who represents an issuer in:

a. Effecting a transaction in a security exempted by subdivisions (1), (2), (3), (4), (9) or (10) of Section 8-6-10;

b. Effecting transactions exempted by Section 8-6-11; or

-9-

various Kellett trusts, and Stiles and Samuel Kellett were, in turn, "control persons"
of both Bassett and the Kellett trusts.[26]

## A.    Count I

Plaintiffs first allege that Bassett and the Kellett defendants are civilly liable
for selling *unregistered* securities in violation of § 8-6-4 of the Alabama Securities
Act, which provides that: "It is unlawful for any person to offer or sell any security
in this state unless:  (1)  It is registered under this article; [or] (2) The security is
exempt from registration under Section 8-6-10; or (3) The transaction is exempt under
Section 8-6-11."[27] Ala. Code § 8-6-4.  The remedies for a violation of that section are
described in § 8-6-19(a), the pertinent portions of which read as follows:

> *Any person who:*
>
> > *(1) Sells or offers to sell a security in violation of any
> > provision of this article* or of any rule or order imposed under this

---

c. Effecting transactions with existing employees, partners, or
directors of the issuer if no commission or other remuneration is paid or
given directly or indirectly for soliciting any person in this state.

A partner, officer, or director of a dealer or issuer is an agent if he otherwise
comes within this definition.

Ala. Code § 8-6-2(2) (1975) (2002 Replacement Vol.).

[26] *See* doc. no. 1 (Complaint), ¶¶ 8-12.  Section 8-6-2(24) defines the terms "Controlling
Person, Control, Controlling, Controlled by, Under common control with" as follows: "The
possession, directly, or indirectly, or the power to direct or cause the direction of the management
and policies of a person, whether through the ownership of voting securities, by contract or
otherwise." Ala. Code § 8-6-2(24).

[27] *Id.*, ¶¶ 12, 13.

article or of any condition imposed under this article, . . .

* * *

*is liable to the person buying the security from him who may bring an action to recover the consideration paid for the security*, together with interest at six percent per year from the date of payment, court costs and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he no longer owns the security. Damages are the amount that would be recoverable upon a tender less the value of the security when the buyer disposed of it and interest at six percent per year from the date of disposition.

Ala. Code § 8-6-19(a)(1) (emphasis supplied).

Plaintiffs also allege that Bassett is civilly liable for not registering with the Alabama Securities Commission as a "dealer" of securities.[28]  Section 8-6-3 of the Act provides that "[i]t is unlawful for any person to transact business in this state as a dealer or agent for securities unless he is registered under this article."  Ala. Code § 8-6-3(a).

Plaintiffs assert that Bassett also is liable as a "control person" under § 8-6-19(c), which provides that:

Every person who directly or indirectly controls a person liable under subsections (a) or (b) of this section, including every partner, officer, or director of such a person, every person occupying a similar status or performing similar functions, every employee of such a person who materially aids in the conduct giving rise to the liability, and every dealer or agent who materially aids in such conduct is also liable jointly

---

[28] *Id.*, ¶ 14.

-11-

and severally with and to the same extent as the person liable under subsection (a) or (b), unless he is able to sustain the burden of proof that he did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.

Ala. Code § 8-6-19(c).  Plaintiffs argue that Bassett was a "control person" of the various Kellett trusts, because he served as the trustee for each trust that sold unregistered Time Domain securities to the plaintiffs.[29]

Finally, plaintiffs allege that Stiles and Samuel Kellett also are liable as "control persons" of Bassett and the Kellett trusts, because they possessed actual, practical, and direct control of both Bassett and the Kellett trusts, and instructed Bassett to sell the unregistered Time Domain securities to plaintiffs.[30]

## B.    Count II

Plaintiffs allege that Bassett is civilly liable under § 8-6-19(a)(1) for *selling* the Time Domain securities as an unregistered "dealer" of securities.[31]  Plaintiffs also

---

[29] *Id.*, ¶ 15.

[30] *Id.*, ¶¶ 16, 17.

[31] *See* doc. no. 1 (Complaint), ¶¶ 24, 31, 34.  Section 8-6-19(a)(1) provides that:

Any person who:

(1) Sells or offers to sell a security in violation of any provision of this article or of any rule or order imposed under this article or of any condition imposed under this article, or

. . .

is liable to the person buying the security from him who may bring an action to

contend that the Kellett defendants are liable under the same statute, as sellers of securities that were sold through an unregistered "dealer."[32]  Plaintiffs further allege that Bassett "was either an unregistered securities 'dealer' . . . or an unregistered agent," and that he is liable under § 8-6-19(c) as a "'dealer who materially aid[ed]' in such sale."[33]  Lastly, plaintiffs allege that Bassett, as a "control person" of the Kellett trusts, and Stiles and Samuel Kellett as "control persons" for Bassett and the Kellett trusts, are liable under § 8-6-19(c) for selling the Time Domain securities through an unregistered dealer.[34]

---

recover the consideration paid for the security, together with interest at six percent per year from the date of payment, court costs and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he no longer owns the security. Damages are the amount that would be recoverable upon a tender less the value of the security when the buyer disposed of it and interest at six percent per year from the date of disposition.

Ala. Code § 8-6-19(a)(1).

[32] *Id.*, ¶ 33.

[33] *Id.*, ¶ 35.  Section 8-6-19(c) provides:

Every person who directly or indirectly controls a person liable under subsections (a) or (b) of this section, including every partner, officer, or director of such a person, every person occupying a similar status or performing similar functions, every employee of such a person who materially aids in the conduct giving rise to the liability, and every dealer or agent who materially aids in such conduct is also liable jointly and severally with and to the same extent as the person liable under subsection (a) or (b), unless he is able to sustain the burden of proof that he did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.

Ala. Code § 8-6-19(c).

[34] *Id.*, ¶¶ 36-38.

Plaintiffs also allege within Count II that they had no reason to know, and did not know, that Bassett was acting as an unregistered "dealer" until August of 2007, "when they were informed *by counsel* [*i.e.*, the attorneys who now represent them in the present action] that Bassett was required to register as a 'dealer.'"[35] They assert that "[t]hey had a right to assume the Kellett defendants did all things necessary to make the transactions lawful."[36]  Plaintiffs allege that Bassett's alleged failure to disclose that he was not registered as a "dealer" with the Alabama Securities Commission gave rise to a "cause of action under Section 8-6-19(a)(2) to set the transaction aside was [sic] fraud, fraudulent concealment, and the omission of a material fact in violation of Section 8-6-19(a)(2)."[37]  That provision provides that any person who:

> Sells or offers to sell a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, the buyer not knowing of the untruth or omission, and who does not sustain the burden of proof that he did not know and in the exercise of reasonable care could not have known of the untruth or omission,

is liable to the person buying the security from him who may bring an action to recover the consideration paid for the security, together with interest at six percent per year from the date of payment, court costs and

---

[35] *Id.*, ¶ 42 (emphasis supplied) (alteration added).

[36] *Id.*, ¶ 41.

[37] *See* doc. no. 1 (Complaint), ¶ 46.

reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he no longer owns the security. Damages are the amount that would be recoverable upon a tender less the value of the security when the buyer disposed of it and interest at six percent per year from the date of disposition.

Ala. Code § 8-6-19(a)(2).

## C.    Count III

The final count of the complaint alleges that Bassett and the Kellett defendants fraudulently misrepresented that Time Domain stock was exempt from registration under the Alabama Securities Act.[38]  Plaintiffs also allege that Bassett and the Kellett defendants fraudulently failed to disclose the following material facts:

(a)    That Individual Defendant Bassett was not registered as a securities "dealer," when he was required to be so registered;

(b)    That, as a result of the non-registration of Bassett as a "dealer" in Alabama, the plaintiffs had a right to rescind their purchases of Time Domain stock under Section 8-6-19(a)(2);

(c)    That, as a result of the misrepresentations that the Time Domain stock was exempt, when it was not, the plaintiffs had a right to rescind their purchase under Section 8-6-19(a)(2).[39]

Plaintiffs contend that Bassett, as a "dealer" of securities and a "control person" of the Kellett trusts, and Stiles and Samuel Kellett in their capacities as "control persons" of Bassett and the Kellett trusts, are liable under § 8-6-19(c) for the sale of

---

[38] *Id.*, ¶ 53.

[39] *Id.*, ¶ 54.

Time Domain securities because of such misrepresentations and omissions of material facts.[40]

**D.      Relief Requested**

Plaintiffs request statutory, compensatory, and punitive damages, as well as their costs and attorneys' fees pursuant to Alabama Code § 8-6-19(a)(2).[41]

## III. DISCUSSION

The court will address the motions of Bassett, and Stiles and Samuel Kellett, to dismiss the plaintiffs' claims for lack of personal jurisdiction, before turning to their Rule 12(b)(6) motions to dismiss for failure to state a claim upon which relief can be granted.[42]  *See* Fed. R. Civ. P. 12(b)(2).  *See also Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 940 (11th Cir. 1997) ("As a general rule, courts should address issues relating to personal jurisdiction before reaching the merits of a plaintiff's claims.") (citing *Madara v. Hall*, 916 F.2d 1510, 1513-14 & n.1 (11th Cir.1990) and Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure, Civil 2d* § 1351, at 243-44 (1990)).

**A.      Motions to Dismiss for Lack of Personal Jurisdiction**

Bassett argues that his contacts with the State of Alabama were limited to the

---

[40] *Id.*, ¶¶ 58-61.

[41] *Id.*, ¶¶ 76-80 (Tender and Remedy).

[42] *See* doc. nos. 33 and 42.

performance in Georgia of legal services on behalf of the Kellett defendants, and that his incidental contacts with some Alabama plaintiffs are not sufficient to establish general or specific jurisdiction over him.  Stiles and Samuel Kellett also argue that their contacts with Alabama are not sufficient to establish either general or specific jurisdiction over them.[43]

The determination of personal jurisdiction over a nonresident defendant invokes a two-step analytical process.  First, a federal district court sitting in diversity must address the reach of the forum state's long-arm statute.  Second,

> [i]f there is a basis for the assertion of personal jurisdiction under the state statute, [the district court must] next determine whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  Only if both prongs of the analysis are satisfied may a federal or state court exercise personal jurisdiction over a non-resident defendant.

*Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 256 (11th Cir. 1996) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

"Alabama permits its courts to exercise jurisdiction over nonresidents to the fullest extent allowed under the Due Process Clause of the Fourteenth Amendment to the Constitution."  *Ruiz de Molina v. Merritt & Furman Insurance Agency, Inc.*,

---

[43] Defendants also contend that plaintiffs cannot show that the exercise of jurisdiction over them comports with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

207 F.3d 1351, 1355-56 (11th Cir. 2000) (citing Ala. R. Civ. P. 4.2(a)(2)(I));[44] *see also Horn v. Effort Shipping Co., Ltd.*, 777 F. Supp. 927, 929 (S.D. Ala. 1991)*; Investors Guaranty Fund, Ltd. v. Compass Bank*, 779 So. 2d 185, 188-89 (Ala. 2000); *Martin v. Robbins*, 628 So. 2d 614, 617 (Ala. 1993).  Alabama's long arm statute is "not limited to rigid transactional categories."  *Alabama Waterproofing Co., Inc. v. Hanby*, 431 So. 2d 141, 145 (Ala. 1983).

The Alabama Supreme Court utilizes a two-part test to determine whether to exercise personal jurisdiction over a nonresident defendant.  The Court first determines "whether it is foreseeable to [the] nonresident defendant that he will be sued in this state," and then weighs "the degree of contact that the nonresident defendant has with this state."  *Keelean v. Central Bank of the South*, 544 So. 2d 153,

---

[44] The cited Rule of civil procedure provides, in pertinent part:

> (2) **Sufficient Contacts**. A person has sufficient contacts with the state when that person, acting directly or by agent, is or may be legally responsible as a consequence of that person's:
>
> . . .
>
> (I) otherwise having some minimum contacts with this state and, under the circumstances, it is fair and reasonable to require the person to come to this state to defend an action. The minimum contacts referred to in this subdivision (I) shall be deemed sufficient, notwithstanding a failure to satisfy the requirement of subdivisions (A)-(H) of this subsection (2), *so long as the prosecution of the action against a person in this state is not inconsistent with the constitution of this state or the Constitution of the United States*.

Ala. R. Civ. P. 4.2(a)(2)(I) (emphasis supplied).

156-157 (Ala. 1989).  With regard to the second element — the determination of the

nonresident defendants' "degree of contact" with the state — the Eleventh Circuit

employs a three-part test to determine if minimum contacts are present:

>        First, the contacts must be related to the plaintiff's cause of action
> or have given rise to it.  Second, the contacts must involve "some act by
> which the defendant purposefully avails itself of the privilege of
> conducting activities within the forum . . . , thus invoking the benefits
> and protections of its laws."  Third, the defendant's contacts with the
> forum must be "such that [the defendant] should reasonably anticipate
> being haled into court there."*Vermeulen* [*v. Renault, U.S.A., Inc.*, 965
> F.2d 1014, 1016 (11th Cir. 1992), *modified and superseded by,* 985 F.2d
> 1534 (11th Cir.), *cert. denied,* 508 U.S. 907 (1993)].  The availability of
> specific jurisdiction depends on the relationship among the defendant,
> the forum, and the litigation.  *Borg-Warner Acceptance Corp. v. Lovett
> & Tharpe, Inc.*, 786 F.2d 1055, 1057 (11th Cir. 1986).

*Francosteel Corp. v. M/V Charm,* 19 F.3d 624, 627 (11th Cir. 1994).

In summary, when a nonresident person purposefully avails himself of the laws

of the forum state, courts sitting within that state are entitled to assert specific

jurisdiction over that party.[45]  Thus, a forum state does not exceed its Constitutional

reach when it asserts specific jurisdiction over interstate contractual obligations.

"[P]arties who 'reach out beyond one state and create continuing relationships with

citizens of another state' are subject to regulation and sanctions in that other State for

the consequences of their activities."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462,

---

[45] Specific jurisdiction arises only from contacts related to the cause of action.  In contrast, general jurisdiction arises from frequent contacts that are unrelated to the litigation.  *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, n.9 (1984).

473 (1985) (quoting *Travelers Health Assn. v. Virginia*, 339 U.S. 643 (1950)).
Moreover, these contacts need not be physical. "Jurisdiction in these circumstances
may not be avoided merely because the defendant did not physically enter the forum
State." *Id.* at 476.

Stiles and Samuel Kellett contend:  they did not purposefully direct their
activities toward Alabama residents; they did not expressly target or solicit Alabama
residents when they made some of their Time Domain stock available for sale; and,
they could not have known that their acts would affect residents of Alabama.
Consequently, they argue that it was not reasonable for them to expect that they could
be sued in this court.

Bassett contends that his contacts with Alabama are tenuous at best, and that
plaintiffs failed to plead sufficient facts to establish that he purposefully directed
activities toward Alabama residents such that he could reasonably anticipate being
subject to this court's jurisdiction.  More specifically, he contends that he did not
target any individuals as potential purchasers of the Kelletts' stock, nor did he initiate
the stock transactions with any of the plaintiffs.  He asserts that each of the plaintiffs
were either referred to him by Time Domain's officers, or individuals who knew
about the availability of the Kellett stock.

Bassett also contends that this court lacks personal jurisdiction over him

-20-

because his contacts with Alabama were related solely to his performance of legal services in Georgia, on behalf of clients, who were also residents of that state. *See Ex parte Dill, Dill, Carr, Stonbraker & Hutchings, P.C.*, 866 So. 2d 519 (Ala. 2003). In *Ex parte Dill*, investors in a failed investment plan, among others, brought an action in an Alabama state court alleging that a non-resident law firm and an associated non-resident attorney prepared and filed an inaccurate document with the Alabama Securities Commission. *See Ex parte Dill*, 866 So. 2d at 531. The Alabama Supreme Court considered whether the attorney's "one-time filing of a Form-D notice with the Alabama Securities Commission in connection with [a] bond offering . . . forms a basis for the exercise of specific jurisdiction" over the law firm and attorney. *Id*. The Court held that the trial court lacked jurisdiction, specifically rejecting the plaintiffs' contention that jurisdiction was proper under the "effects test" set forth in *Calder v. Jones*, 465 U.S. 783 (1984).

In *Calder*, the Supreme Court held that a California court could exercise jurisdiction over two Florida petitioners who allegedly published a libelous article about a California resident. *See* 465 U.S. at 791. Even though petitioners' contacts with California that were unrelated to the action were minimal, the Court found that jurisdiction by the California court was appropriate because the petitioners were the "primary participants in an alleged wrongdoing intentionally directed at a California

resident." *Id.* at 790.  Petitioners knew that the brunt of their alleged conduct would be felt by respondent in her own state and, "[u]nder the circumstances, petitioners must reasonably anticipate being haled into court there." *Id.* at 789.  Accordingly, under the "*Calder* effects test," personal jurisdiction may attach to a nonresident defendant when his or her actions were: "(1) intentional; (2) aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Licciardello v. Lovelady*, 544 F.3d 1280, 1286 (11th Cir. 2008).

In *Ex parte Dill*, the Alabama Supreme Court held that the plaintiffs failed to satisfy the "effects test" because, unlike *Calder*, at the time the nonresident attorney filed the "Form-D notice" in Alabama, "the individual plaintiffs were unidentified and unidentifiable," and "there was no foreseeable harm to any *particular* plaintiff."  866 So. 2d at 532 (emphasis original).  The Court held that, "[b]ecause the blue-sky filings were not precipitated by [the law] or [the attorney] or directed specifically at identified, or identifiable, Alabama residents, the 'purposeful-availment requirement' of due process is absent, and the *Calder* effects test is not satisfied."  866 So. 2d at 533 (bracketed alterations added).  Likewise, Bassett contends that Alabama lacks jurisdiction over him because he neither precipitated the sale of Time Domain securities to Alabama residents, nor targeted individual Alabama residents to purchase the securities.

Finally, Bassett, and Stiles and Samuel Kellett argue that, even if this court were to conclude that they purposefully established constitutionally significant contacts with Alabama, the exercise of personal jurisdiction over them would offend "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 326. A court must weigh several factors to determine whether its exercise of jurisdiction would comport with traditional notions of "fair play and substantial justice." *Id*. These factors include "the burden on the defendant, the interests of the forum state, . . . the plaintiff's interest in obtaining relief, . . . the interstate judicial system's interest in obtaining the most efficient resolution of the controversies, and the shared interests of the several states in furthering fundamental substantive social policies." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

In response to the foregoing arguments, plaintiffs assert that the defendants' motions to dismiss for lack of personal jurisdiction are frivolous. They argue that jurisdiction is established over the Kellett defendants and Bassett pursuant to the Alabama Supreme Court's decision in *Gilford Partners v. Pizitz*, 630 So. 2d 404 (Ala. 1993), holding that a trial court properly exercised personal jurisdiction over nonresidents who *sold* securities in violation of the registration requirements of the Alabama Securities Act. *Id*. at 406. Similar to the facts of this case, the plaintiffs in *Gilford Partners* alleged:

(1) that the defendants had failed to register the limited partnership interest in Gilford Partners, in violation of § 8-6-4; (2) that [defendants H. Robert] Holmes and Holmes-Gilford [Partners] had failed to register as agent and dealer, respectively, in violation of § 8-6-3; and (3) that the defendants had made misrepresentations and omissions in information sent to the plaintiffs, in violation of § 8-6-17.

*Id*. at 405.  The *Gilford* Court adopted the reasoning of the U.S. District Court for the

Northern District of Illinois in *Florendo v. Pan Hemisphere Transport, Inc.*, 419 F.

Supp. 16 (N.D. Ill. 1976), which the Alabama Supreme Court summarized as follows:

> The court in *Florendo v. Pan Hemisphere Transport, Inc.*, . . . found that the defendants in that case, who had failed to register the security sold to the plaintiff, "[had] subjected themselves to the jurisdiction of [the Illinois] court.  Because the injury . . . took place in Illinois, that state was the situs of the tortious act." 419 F. Supp. at 18. The court further stated that exercising jurisdiction did not offend the "traditional notions of fair play and substantial justice," because the defendants should have foreseen the possibility of being sued in the Illinois forum.  *Id*. at 18-19.  The district court held that an action such as that against the defendants was foreseeable because "[the] defendants [had] sold an interest in a limited partnership to a specifically identified purchaser residing in Illinois."  The court added that "[i]t [was] certainly fair under the circumstances to require them to litigate a controversy concerning that sale in Illinois." *Id*. at 19.

*Gilford Partners*, 630 So. 2d at 406.

Plaintiffs also argue that *Ex parte Dill* is distinguishable from the present case

because it involved only the performance of *legal services*, not *selling services*,

outside Alabama, and, they say, the Kellett defendants *and* Bassett both acted as

sellers of the securities.

Upon consideration of the parties' arguments and briefs, this court finds that Stiles and Samuel Kellett, as sellers of the Time Domain securities, are subject to the jurisdiction of this court. *See Gilford Partners*, 630 So. 2d at 405 (affirming the judgment of the trial court that "nonresident defendants who unlawfully sell unregistered securities in the forum state subject themselves to personal jurisdiction in the state in actions to enforce statutory remedies for such unlawful sales"). They "purposefully availed" themselves "of the privilege of conducting activities within the forum State" by contacting Time Domain's officers in Alabama, and requesting that corporate officers identify prospective purchasers for their corporate stock. *See Burger King*, 471 U.S. at 475-76 (holding that "where the defendant 'deliberately' has engaged in significant activities within a State . . . it is presumptively not unreasonable to require him to submit to the burdens of litigation in the forum as well"). Additionally, Stiles and Samuel Kellett reasonably should have anticipated being haled into court in Alabama when they precipitated the sale of their stock in an Alabama-based company, and executed purchase and sale agreements that showed many of the purchasers to be residents of Alabama. Stiles and Samuel Kelletts' contacts with Alabama meet the constitutional requirements concerning the connection between their contacts with the claims asserted, purposeful availment, and reasonable expectation of being haled into court in Alabama. Lastly, the court's

-25-

exercise of jurisdiction over Stiles and Samuel Kellett does not offend traditional notions of "fair play and substantial justice," because there is no evidence indicating that they would be substantially inconvenienced by proceedings in Alabama, and Alabama has an interest in adjudicating claims brought by Alabama residents under the Alabama Securities Act. *See International Shoe*, 326 U.S. at 320.

On the other hand, the question of whether Bassett is subject to personal jurisdiction in Alabama is a closer call, because he did not precipitate the sale of Time Domain securities to Alabama residents. Yet, when considering the allegations in the complaint in a light most favorable to plaintiffs, it can be said that Bassett's telephone conversations with specifically identified Alabama residents and written correspondence (mailing of letters and legal documents) to specifically identified purchasers in Alabama satisfies the *Calder* effects test. *See Calder*, 465 U.S. at 788-89. Unlike *Ex parte Dill*, here there was foreseeable harm to *particular* residents of Alabama because Bassett interacted with individual plaintiffs. In short, the plaintiffs' allegations support a finding that Bassett's telephone conversations and correspondence with Alabama residents gave rise to a reasonable expectation of being haled into court here and the court's exercise of jurisdiction does not offend traditional notions of "fair play and substantial justice." *See International Shoe*, 326 U.S. at 320. Therefore, Bassett is also subject to the jurisdiction of this court.

**B.      Motions to Dismiss for Failure to State a Claim**

Bassett and the Kellett defendants also argue that all of the plaintiffs' claims are barred by the two-year statute of limitations embodied in the Alabama Securities Act, and should be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).[46]  Section 8-6-19 of the Alabama Securities Act provides, in pertinent part, that:

> No person may obtain relief under this section in an action involving the failure to register *unless suit is brought within two years from the date of sale*.  All other actions for relief under this section must be brought within the earlier of two years after discovery of the violation or two years after discovery should have been made by the exercise of reasonable care.

Ala. Code § 8-6-19(f) (emphasis supplied).   Plaintiffs filed their complaint on December 28, 2007, but allege that they purchased the securities *seven years* before, during the Summer of 2000.[47]

The Alabama Legislature amended § 8-6-19 during its 1990 Regular Session. *See* Act No. 90-527, Acts of Alabama 1990 (codified as amended at Ala. Code § 8-6-19 (1991)).  According to the official comment to § 8-6-19, Act No. 90-527 created

---

[46] "Dismissal under Federal Rule of Civil Procedure 12(b)(6) on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred." *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1288 (11th Cir. 2005) (internal quotations omitted).

[47] *See* doc. no. 1 (Complaint), at ¶ 4 ("Plaintiffs allege that stock which they purchased from the Defendants in Time Domain Corporation . . . was purchased and full consideration was paid for said stock under circumstances of fraudulent nature as more specifically set out below in to wit: the summer of 2000.").

subsection 8-6-19(f) to "amend[] prior subsection 8-6-19(e) which simply provided a two-year statute of limitations, and [to] distinguish[] between causes of action based on failure to register securities as required under the Act and other causes of action in which the factual predicates often are concealed or difficult to detect." Ala. Code § 8-6-19(f), official cmt (bracketed alterations added).

Act No. 90-527, as drafted and enacted by the Alabama legislature, included the word "securities" between the words "register" and "unless" in the first sentence of the subsection that was later codified as § 8-6-19(f): *i.e.*, "No person may obtain relief under this section in an action involving the failure to register *securities* unless suit is brought within two years from the date of sale." Act No. 90-527, Acts of Alabama 1990 (emphasis supplied). However, the first sentence of § 8-6-19(f), *as codified*, omitted the word "securities."

In a May 9, 1990 letter from Bob McCurley, then Director of the Alabama Law Institute, to Willie Bell with the Alabama Legislative Reference Service in Montgomery, McCurley stated: "There are two errors in [Act 90-527] that we should correct if at all possible. . . . The word 'securities' is inappropriate to the meaning of this section and should be omitted. This probably should be noted in the codification bill."[48]

---

[48] Doc. no. 59, Exhibit C (May 9, 1990 letter).

The following year, during July of 1991, the Alabama Legislature adopted and incorporated

> into the Code of Alabama 1975 those general and permanent laws of the state enacted during the 1989 Special Session and *the 1990 Regular Session of the Legislature*, as contained in the 1990 Cumulative Supplement to certain volumes of the Code and in the 1990 Replacement Volume 14 of the Code . . .

Act No. 91-553, Acts of Alabama 1991 (emphasis added).  In accordance with the letter from McCurley, the text of Act No. 90-527, as codified in Title 8, Chapter 6 of the official Code of Alabama, omitted the term "securities" from the first sentence of § 8-6-19(f).

Bassett argues — and this court agrees — that it is the language of Act No. 90-527 *as codified* in § 8-6-19(f) that has the force of law.  Alabama Code § 29-7-8 provides that:

> Upon the adoption and incorporation of the annual cumulative supplement and each replacement volume into the Code of Alabama by statute, that supplement or replacement volume shall be considered as part of the entire Code of Alabama and shall be considered for statutory construction purposes in the same manner as all other portions of the code.  . . .

Ala. Code § 29-7-8(b)(1).  Moreover, the Alabama Supreme Court held in *Swift v. Gregory*, 786 So. 2d 1097 (Ala. 2000), that "[o]nce the Code Commission modifies an act and the Legislature thereafter adopts a Code containing the modification, the

-29-

modification has the force of law." *Id*. at 1100.  *See also Ex parte State Dept. of Revenue*, 683 So. 2d 980, 982 (Ala. 1996) (holding that "the [annual] adoption of the entire Code supersedes the original enactments and any prior codification") (bracketed alteration added).

Thus, it is the language of § 8-6-19(f) as codified in the 2002 Replacement Volume of the 1975 Code of Alabama — and *not* the text of Act No. 90-527 as it was enacted by the state legislature — that has the force of law.  Stated differently, the absolute statute of limitations set out in the first sentence of § 8-6-19(f) is not limited to actions involving the failure to register *securities*, but instead applies to all claims arising under the Alabama Securities Act that pivot upon a party's "failure to register."

For that reason, Bassett and the Kellett defendants contend that each of the plaintiffs' claims is barred by the two-year statute of limitations specified in the first sentence of § 8-6-19(f).  They argue that all of the plaintiffs' claims, including their fraud claims, are based upon two allegations:  defendants *failed to register* the Time Domain *stock* in accordance with the Alabama Securities Act; and, Bassett *failed to register* as a "dealer" of securities with the Alabama Securities Commission.

Plaintiffs rely upon the doctrine of equitable tolling to argue that, even if § 8-6-19(f) is construed to establish a two-year statute of limitations for all of their claims,

the defendants' allegedly fraudulent act of representing that the securities were exempt from registration, and the defendants' alleged failure to disclose that Bassett was not registered as a securities "dealer," are sufficient to toll the two-year statute of limitations.

Plaintiffs argue that the official comment to § 8-6-19(f) indicates that the subsection does not operate in derogation of the principles of equitable tolling or fraudulent concealment.  Specifically, the official comment states:

> Subsection 8-6-19(f) sets forth a statute of limitations applicable to the civil liability provisions of this article.  It amends prior subsection 8-6-19(e) which simply provided a two-year statute of limitations, and distinguishes between causes of action based on failure to register securities as required under the Act and other causes of action in which the factual predicates often are concealed or difficult to detect.  This provision is not to be construed in derogation of any applicable principles of equitable tolling or fraudulent concealment, but to assure that the policies of the act are liberally construed to effectuate its remedial purposes.

Ala. Code § 8-6-19(f), official cmt.  Plaintiffs urge the court to consider the comment and find that the statute and comment, when read together, are "crystal clear" that equitable tolling is applicable to all of the plaintiffs' claims.  Doc. no. 54, at 23. Plaintiffs then argue that they have sufficiently pled a lack of knowledge of the alleged violations of the Alabama Securities Act to defeat a motion to dismiss.  *See, e.g.*, *Fischler v. AmSouth Bancorporation*, 971 F. Supp. 533, 538 (M.D. Fla. 1997)

("It is not appropriate for the Court to determine when the facts giving rise of the cause of action should have been discovered; this is a question of fact which should not be determined on a motion to dismiss.").

In response to plaintiffs' equitable tolling argument, defendants point to the contrast between the first and second sentences of § 8-6-19(f), and contend that the distinction demonstrates that the drafters of the Alabama Securities Act intended to allow tolling of the two-year statute of limitations *only* in situations where a claim is *not* premised upon "an action involving the failure to register." Ala. Code § 8-6-19(f).

The first sentence of § 8-6-19(f) has not yet been construed by an Alabama state court. Accordingly, "the starting point for interpreting a statute is the language of the statute itself"; and, "[a]bsent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980). *See also Ex parte State Dept. of Revenue*, 683 So. 2d at 983 ("Absent a clearly expressed legislative intent to the contrary, the language of the statute is conclusive."). Moreover, "[w]hen the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Connecticut National Bank v. Germain*, 503 U.S. 249, 254 (1992) (quoting *Rubin v. U.S.*, 449 U.S. 424, 424 (1981). *See also*

*Blue Cross & Blue Shield v. Nielsen*, 714 So. 2d 293, 296 (Ala. 1998) ("'[i]f the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.'") (quoting *IMED Corp. v. Systems Eng'g Assocs. Corp.*, 602 So. 2d 344, 346 (Ala. 1992)).

The court follows the principles of statutory construction set out by the Alabama Supreme Court. As that Court has explained, "[t]he fundamental principle of statutory construction is that words in a statute must be given their plain meaning." *Mobile Infirmary Medical Center v. Hodgen*, 884 So. 2d 801, 814 (Ala. 2003). Indeed, it is settled law in Alabama that words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used, a court is bound to interpret that language to mean exactly what it says. *See e.g.*, *Ex parte Employees' Retirement System of Alabama*, 644 So. 2d 943, 946 (Ala. 1994); *IMED Corp.*, 602 So. 2d at 346.

The plain language of § 8-6-19(f) sets out an absolute two-year statute of limitations for "action[s] involving the failure to register," and each of plaintiffs' claims *involve* either the defendants' *failure to register* the Time Domain securities, or Bassett's *failure to register* as a dealer of the securities in accordance with the Alabama Securities Act. The Eleventh Circuit has often looked to dictionary definitions for guidance in determining the plain meaning of statutory terms. The

-33-

term "involve" is defined as "[t]o include or contain as a part," and a violation of the registration requirements of the Alabama Securities Act is *a part of* each of the plaintiffs' claims. *Webster's II New Riverside University Dictionary* 642 (1994). *See also In re James*, 406 F.3d 1340, 1343 (11th Cir. 2005) (observing that courts often consider dictionary definitions to determine the ordinary meaning of statutory terms).

Because the plain language of § 8-6-19(f) is not ambiguous, the court may not construe the statute in conjunction with its official comment. The Alabama Supreme Court has clearly stated that, even though official comments may be "a valuable aid in construction, they have not been enacted by the legislature and are not necessarily representative of legislative intent." *Simmons v. Clemco Industries*, 368 So. 2d 509, 514 (Ala. 1979) (holding that the official comment to Alabama Code § 7-2-607, part of Alabama's enactment of the Uniform Commercial Code, was not controlling in light of the unambiguous language of the statute). *See also, IMED Corp.*, 602 So. 2d at 348 ("the comments that follow each section of the [Alabama Trade Secrets] Act, which were prepared by the Alabama Law Institute's committee on trade secret law, although perhaps useful in construction, have not been enacted by the legislature and do not necessarily represent legislative intent") (bracketed alteration added).

Thus, the court finds that all of the plaintiffs' claims are subject to an absolute two-year statute of limitations that is not subject to equitable tolling. The two-year

statute of limitations for all of the plaintiffs' claims was triggered on "the date of sale" of the Time Domain corporate stock, which the face of the plaintiffs' complaint clearly shows occurred during the Summer of 2000, more than seven years before plaintiffs filed their complaint. Consequently, all of the plaintiffs' claims are time-barred and due to be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

Moreover, even if the doctrine of equitable tolling is applied to the statute of limitations for the plaintiffs' claims of fraudulent misrepresentations and omissions of material facts, those claims are time-barred because plaintiffs should have recognized the alleged violations more than two years before the filing of their complaint.[49] The Kellett defendants, in their motion to dismiss, assert that a prior action by other purchasers of Time Domain stock, instituted in the Circuit Court of Madison County, Alabama, during 2003, should have put plaintiffs on notice of the defendants' alleged violations of the Alabama Securities Act. The Kellett defendants specifically argue that four years prior to the commencement of the present action, a purchaser of Time Domain stock, who is not a plaintiff in the present action, sued Time Domain, the Kellett defendants, and other individuals and entities in Alabama

---

[49] The second sentence of § 8-6-19(f) states: "All other actions for relief under this section must be brought within the earlier of two years after discovery of the violation *or two years after discovery should have been made by the exercise of reasonable care*." Ala. Code § 8-6-(f) (1975) (2002 Replacement Vol.) (emphasis supplied).

state court "alleging precisely the same unsupported facts and theories against the Kelletts." Doc. no. 40, at 12. *See Buist v. Time Domain Corporation*, CV-03-1383, Circuit Court of Madison County, Alabama.

This court takes judicial notice of the factual basis of that case to consider whether plaintiffs in the present action should have discovered the alleged violations of the Alabama Securities Act at an earlier date. *See* Fed. R. Evid. 201(b);[50] and *Cash Inn of Dade, Inc. v. Metropolitan Dade County*, 938 F.2d 1239, 1243 (11th Cir. 1991) ("A district court may take judicial notice of public records within its files relating to the particular case before it or other related cases."). The plaintiff in the state court action appealed a judgment of the trial court to the Alabama Supreme Court, and that court subsequently issued an opinion setting out the factual basis of the plaintiff's claims. *See Buist v. Time Domain Corporation*, 926 So. 2d 290 (Ala. 2005). That Court's statement of the facts provided that on "May 30, 2003, Buist filed this action in the Madison Circuit Court, alleging that the defendants were liable for violations of the Alabama Securities Act ('the ASA'), minority shareholder oppression, misrepresentation, fraud, and bad faith." *Buist*, 926 So. 2d at 292. The opinion further states that the purchaser filed suit after learning, in April of 2003, that "Time

_____

[50] Federal Rule of Evidence 201, "Judicial Notice of Adjudicative Facts," states that "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Domain would soon be taken over by new investors," and that under the reorganization "all existing shares in Time Domain would be 'reverse split sixty-nine to one.'" *Id.*

The court finds that, in the exercise of reasonable care, plaintiffs in the present action should have discovered the alleged violations of the Alabama Securities Act more than two years before the commencement of this action on December 28, 2007. *See, e.g.*, *Wright v. Heyne*, 349 F.3d 321, 331 (6th Cir. 2003) ("If the statute were tolled until an attorney informs the plaintiff that he or she has an ERISA claim, a plaintiff could delay accrual of a claim simply by waiting before consulting an attorney.").

## IV.  CONCLUSION AND ORDER

In accordance with the foregoing, the motion to dismiss filed by Stiles and Samuel Kellett pursuant to Federal Rule of Civil Procedure 12(b)(2) is DENIED.[51] The portion of the motion to dismiss filed by William R. Bassett pursuant to Fed. R. Civ. P 12(b)(2) is DENIED and the portion of that motion pursuant to Fed. R. Civ. P 12(b)(6) is GRANTED.[52]   Lastly, the motion to dismiss filed by the Kellett

---

[51] *See* doc. no. 42 (Stiles and Samuel Kelletts' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2)).

[52] *See* doc. no. 33 (Bassett's motion to dismiss).

-37-

defendants pursuant to Federal Rule of Civil Procedure 12(b)(6) is GRANTED.[53]

Plaintiffs' claims are dismissed with prejudice.  Costs are taxed to plaintiffs.  The

clerk is directed to close this file.

      DONE and ORDERED this 23rd day of January, 2009.

 

_____

      United States District Judge

---

[53] *See* doc. no. 39 (the Kellett defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)).

-38-